**MORRIS et al. v. UNITED STATES.**

**No. 10167.**

Circuit Court of Appeals, Fifth Circuit.

June 18, 1942.

Rehearing Denied July 22, 1942.

913

Frank J. Looney and Ben F. Roberts, both of Shreveport, La., and J. Ralph Goff, of Arcadia, La., for appellants.

Malcolm E. Lafargue, U. S. Atty., of Shreveport, La., for appellee.

Before HUTCHESON and HOLMES, Circuit Judges, and STRUM, District Judge.

HUTCHESON, Circuit Judge.

Appellant was convicted on 3 counts of an indictment charging him and one Morris, in five counts, two charging appellant, and two charging Morris, separately with the substantive offenses of endeavoring,

and one charging them together with conspiracy, to corruptly influence a juror. Sentenced on the three counts to two years in the penitentiary, he alone appeals. Complaining neither of the insufficiency of the evidence to establish his guilt, nor of the charge of the court, appellant rests his case for reversal on, (1) the claimed illegality in the constitution and therefore the consequent nullity of the grand jury which indicted him; (2) the failure of the indictment to sufficiently charge him with an offense; (3) prejudice by misjoining in the same indictment, separate charges against him and against Morris; and (4) the denial of his motions for separate trial and to compel the government to elect.

The points against the grand jury were made by plea in abatement. They were, (1) that Dalton, the jury commissioner who drew the grand jury, was not, as required by statute, a duly appointed jury commissioner, and (2) that the Western District of Louisiana having no city of more than 300,000, only one grand jury at a time may be convened in it, and a grand jury drawn for the entire Western District of Louisiana, convened in the Shreveport Division on February 24, 1941, not having been discharged, the court was without power, on April 11, 1941, to call the grand jury, which returned this indictment, to convene at Lake Charles on April 28, 1941.

The points made against the sufficiency of the indictment are (1) that the counts of the indictment on which he was convicted, without setting out any specific acts, charge the offense merely in the general terms of the statute; (2) the conspiracy count is attacked, as confused and ambiguous, in that it in effect charges separate conspiracies, and is bad for duplicity.

The attack on the indictment for misjoinder and on the ruling denying appellant's motion to require an election, is based on the fact that Counts 1 and 2 charge this defendant alone, and Counts 3 and 4 charge Morris alone, with corruptly endeavoring to influence and impede the due administration of justice.

█ The United States, pointing to the uniform course of decision[1] that attacks upon an indictment for irregularities in the constitution of a grand jury, will not, unless they go to the very existence of the grand jury, be heard to affect it, in the absence of a showing of substantial injury or prejudice to the defendant, insists that since not only no showing but no claim of such injury is made, the objections must be regarded as wholly without merit. Appellant, on its part, urges that these matters go, not to irregularities or defects in the constitution of the grand jury but to its very existence as a grand jury, and that a grand jury in the federal court must be a de jure, it may not be a de facto grand jury. United States v. Johnson, 7 Cir., 123 F.2d 111, 120. It insists that the objections it lodges against the legality of the grand jury are not formal but of the utmost substance, and that wholly without regard to questions of prejudice or injury to the defendant, the question whether the grand jury was legally constituted must be considered and determined here. Agreeing with appellee that normally an indictment will not be questioned because of irregularities in the constitution of a grand jury unless they show that prejudice or injury has resulted therefrom, but with appellant that a complaint, which, as here, challenges the very existence of the grand jury as a legal organization, must be given consideration, we turn to an examination of it.

█ The plea in abatement was decided below and the correctness of the ruling must be determined here upon a stipulation of fact.[2] The district judge thought

---

[1] Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624; Hill v. United States, 8 Cir., 15 F.2d 14; Wolfson v. United States, 5 Cir., 101 F. 430; Borgia v. United States, 9 Cir., 78 F.2d 550; Brookman v. United States, 8 Cir., 8 F.2d 803.

[2] "In this cause it is stipulated and agreed by and between the United States Attorney and counsel for defendant that Adolph Jacobs was duly appointed Jury Commissioner in October, 1924, by Honorable Ben C. Dawkins, Judge of this Court.

"That the said Jacobs is still serving in this capacity, and that the other four Commissioners for the Western District of Louisiana were appointed at various dates later, and the said Dalton, who was the Commissioner drawing the jury in Lake Charles in April, 1941, was appointed Commissioner by the Honorable Ben C. Dawkins, Judge of this District in April, 1932.

that upon the stipulated facts the plea was not well taken. We agree. As to the claim that Dalton who drew the grand jury, was not duly appointed, the stipulation shows positively that he was appointed, and that if the court had the power to appoint more than one commissioner in the district, he was duly appointed. The statute authorizing the appointment of jury commissioners, Jud.Code § 276, 28 U.S.C.A. § 412, does not in terms set a limit to the number of jury commissioners the judge may appoint. Appellant cites no authority in support of his argument that it limits the appointment to one commissioner to a district. United States v. Rockefeller, D.C., 221 F. 462, 465, is direct authority to the contrary. The division not only of this but of other judicial districts into separate divisions, and the constitution of complete machinery for transacting the business of and holding a court there, of which we take judicial knowledge, completely support the view there taken.

■ Its other point that in a district composed of divisions as this district is, there may be only one grand jury summoned to inquire into offenses for the entire district, that, in short, a grand jury cannot be validly summoned in the Lake Charles Division until prior grand juries summoned for other divisions have been discharged, is no better taken. Here again appellant, attacking as illegal a practice so general over the United States that we take judicial knowledge of it, ought to come prepared to point to some statute or decision striking it down. But relying entirely upon the provisions of Section 421, Title 28, U.S.C.A., as amended April 17, 1940, "no grand jury shall be summoned to attend any district court unless the judge

thereof, in his own discretion or upon a notification by the district attorney that such jury will be needed, orders a venire to issue therefor.", he cites no decision giving that provision the construction he claims for it, or otherwise limiting grand juries in a five division district, to one grand jury for the whole of it. It will be noted that this statute contains no directions as to the constitution and organization of a grand jury and that while it prohibits the summoning of a grand jury for a district court, unless the judge orders it, it does not place any limitation on the number of district courts that may be held at the same time in any district. On the contrary, by the last sentence of the statute, "the district court may in term order a grand jury to be summoned at such time, and to serve such time as it may direct", it makes it clear that the power of the district judge to call grand juries is not limited.

■ In short, the provision on which appellant relies merely negatives the power of others than a district judge, to draw a grand jury, and the statute as a whole, in terms confirms the implications of its first sentence that no one but a judge of a district court can draw a grand jury, and it is for him to say when and for what time grand juries may be drawn.

■ In Breese v. United States, 4 Cir., 203 F. 824, 828, it was said of the objection, that the court had not issued a formal order directing that writ of venire facias issue. "An order was made and entered of record * * * requiring the clerk and jury commissioner to draw the jurors * * * Section 810, Rev.Stats. * * * reads: 'No grand jury shall be summoned * * * unless * * * the judge * * *

---

"That on October 19th, 1940, an order was issued by this Court convening a Grand Jury for the entire Western District of Louisiana, to be held at Shreveport, Louisiana, on November 4th, 1940.

"That on November 22nd, 1940, an order was issued by this Honorable Court calling and convening a Grand Jury for the entire Western District of Louisiana to be held at Lake Charles on December 16th, 1940.

"That on February 7th, 1941, an order was issued convening a Grand Jury for the entire Western District of Louisiana to be held at Shreveport on February 24th, 1941.

"That on April 11th, 1941, an order was issued by this Honorable Court call-

ing and convening a Grand Jury to be held at Lake Charles on April 28th, 1941.

"That on May 26th, 1941, an order was issued recalling the Grand Jury previously drawn in order of date, February 7th, 1941, to be held for the entire Western District of Louisiana at Shreveport, Louisiana, on June 10th, 1941.

"That in each case the Grand Juries were adjourned subject to call.

"That the names placed in the Jury Box at Lake Charles and from which the Jury was drawn at Lake Charles on April 16th, 1941, and on December 20th, 1940, were placed therein by a Deputy Clerk and the said Dalton, acting as Commissioner."

orders a venire to issue therefor * * * ' ''. We are of the opinion that in enacting this statute, Congress had no intent to legislate as to the validity of indictments. The purpose was merely to prevent the expense of having a grand jury unnecessarily summoned. In Clawson v. United States, 114 U.S. 477, 487, 5 S.Ct. 949, 954, 29 L.Ed. 179, the court said: "In United States v. Hill [Fed.Cas. No. 15,364, 1 Brock 156], Chief Justice Marshall, speaking of the law as it then existed, says: 'It has been justly observed that no act of congress directs grand juries, or defines their powers. By what authority, then, are they summoned, and whence do they derive their powers? The answer is that the laws of the United States have erected courts which are invested with criminal jurisdiction. This jurisdiction they are bound to exercise, and it can only be exercised through the instrumentality of grand juries. They are, therefore, given by a necessary and indispensable implication. But how far is this implication necessary and indispensable? The answer is obvious. Its necessity is co-extensive to that jurisdiction to which it is essential.' "[3] Federal district courts in general, and particularly that of the Western District of Louisiana, are authorized to sit as courts in divisions. The statutes creating the districts and constituting the divisions require district courts to be held in each division and provide that in each division there shall be a clerk or a deputy. Each of the district courts held in each of these divisions is as complete a court in every respect as in each and every other. No citation of authority is needed therefore to convince that, in the absence of a statutory prohibition or limitation upon its jurisdiction as a federal court authorized to consider offenses requiring indictment, the judge or judges of any district court have power to draw grand juries in each division and the grand juries so drawn have power to act without regard to the presence and functioning of grand juries in other divisions. In United States v. Perlstein, D.C., 39 F.Supp. 965, Judge Maris, in a careful opinion, reaches the same conclusion as we do. We do not agree with his observation that except as specially permitted in the statute,[4] never more than one grand jury may serve at the same place of holding court, for we think the statute as to the number of grand juries permissible in the different situations named in it, was only directory and not intended to impose mandatory restrictions on the judge. But we do agree entirely with his conclusion that grand juries may be serving at the same time in all of the divisions.

■■■ Appellant's points against the indictment and the refusal of his motion for severance and to elect, hardly, we think, present matters for serious consideration. If we assume that the complaint, that because couched in the general language of the statute the substantive counts were insufficient, was well taken,[5] there was no motion for a bill of particulars, there was a conspiracy count which fully and completely apprised him of the facts the government would rely on, and he could not have been prejudiced by their lack of detail. If we assume further that these counts were defective and could not support a conviction, this would not avail appellant for the sentence of 2 years which was imposed on that count alone and er-

---

[3] What is said in Re Mills, 135 U.S. 263, 267, 10 S.Ct. 762, 763, 34 L.Ed. 107, in denying the authority of a United States court established in the Indian territory to draw a grand jury, "Now, it is significant that the act establishing a United States court in the Indian Territory makes no provision for a grand jury, although it does provide for petit juries in civil and criminal cases. A grand jury, by which presentments or ·indictments may be made for offenses against the United States is a creature of statute. It cannot be impaneled by a court of the United States by virtue simply of its organization as a judicial tribunal. The provisions of the Revised Statutes relating to the impaneling of grand juries for the district and circuit courts (Title 13, c. 15 [28 U.S.C.A. § 411 et seq.]) do not apply to the court established in the Indian Territory by the act of March 1, 1889; for, although the latter is a court of the United States, it is not a district or circuit court of the United States. Reynolds v. United States, 98 U.S. 145, 154 [25 L.Ed. 244]; Ex parte Farley (Ex parte Wilson) [C.C.], 40 F. 66," is not contrary to, it is in confirmation of this view. For the ground of the decision was that the territorial court was not a district or circuit court of the United States and therefore did not have the power they had to impanel grand juries.

[4] 28 U.S.C.A. § 421.

[5] Though the modern authorities seem contra, United States v. Polakoff, 2 Cir., 112 F.2d 888, 134 A.L.R. 607.

rors or defects therefore as to other counts became immaterial.[6] Finally, appellant's complaint that he should have had a severance and that the government should have been required to elect is entirely without substance. It is settled law that questions of severance and joinder are addressed to the sound discretion of the trial court[7] and where as here no claim of injury from the joinder is made, none of the evidence is brought up, and there is no complaint that the evidence was insufficient to support the conviction, the complaint of misjoinder and of failure to sever or elect is purely academic. The trial was without reversible error. The judgment is affirmed.

HOLMES, Circuit Judge, concurs in the result.

---

[6] Sinclair v. United States, 279 U.S. 263, 268, 49 S.Ct. 268, 73 L.Ed. 692; Abrams v. United States, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173; Coupe v. United States, 72 App.D.C. 86, 113 F.2d 145.

[7] Pankratz Lbr. Co. v. United States, 9 Cir., 50 F.2d 174; United States v. Smith, 2 Cir., 112 F.2d 83; Ginsberg v. United States, 5 Cir., 96 F.2d 433.